## Commonwealth v. Fiore

*William A. Mitchell,* for Commonwealth.
*Samuel S. Pangburn,* for Private Prosecutor.
*Clyde G. Tempest, p.p.,* District Magistrate.

SWEET, P. J., July 8, 1975.—This is a very unusual case. It seems that a criminal complaint was filed on or about December 3, 1974, and a hearing held by Magistrate Tempest on or about February 26, 1975. Magistrate Tempest never returned the transcript to court. On June 4, 1975, Samuel S. Pangburn, private prosecutor, wrote a letter to Mr. Costa, which has been made a part of the proceedings. Based on this, the district attorney asked for an application for order extending the time for commencement of trial under Rule 1100, and asked for a hearing on a rule to show cause why the extension should not be granted and a rule to show cause on Magistrate Tempest why he

should not forward the papers, "wherein he found a prima facie case, to the District Attorney's Office for action thereon."

After an answer was filed by Magistrate Tempest with exhibits and an affidavit of I. W. Cordisco, Esq., we had a hearing on June 17, 1975. No one opposed the grant of the extension, so that rule is made absolute. The rule against Magistrate Tempest occasions considerable more difficulty.

The gist of Mr. Tempest's answer and Mr. Cordisco's affidavit is that he dismissed the charges against defendant, William Fiore. We took the oral testimony of Attorney Samuel S. Pangburn, private prosecutor; Assistant District Attorney, Robert Clarke, who represented the district attorney's office in this matter; Steve Segedi, International Representative of United Mine Workers of America and three coal miners, Miller Savage, Metro Matas and William Andrews. Mr. Pangburn, who attended the squire's hearing, testified unequivocally that the magistrate held William Fiore for court for terroristic threats. In this, he was corroborated by Mr. Segedi and the three coal miners who were parties. Mr. Pangburn announced that he had 14 other coal miners in attendance at the hearing before Magistrate Tempest on February 26th, who he offered further would corroborate what these five witnesses heard at the magistrate's office, at the end of the hearing. Assistant District Attorney Clarke also testified to a plea bargain conference before Judge DiSalle in which there was certain circumstantial support for the Pangburn testimony. Mr. Tempest's return and Mr. Cordisco's affidavit, which are attached as part of the record, both assert that Mr. Tempest did not hold William Fiore for court; the respondent offered Fiore's testimony, which if given, would corroborate the magistrate.

This, of course, raises the question: how much proof does it take to overcome the return of the magistrate? We can find nothing squarely on point, since the system is relatively new and this has apparently not come up in Pennsylvania under the Constitution of 1968.

The analogy which at once occurs to mind is the parallel of the sanctity of the sheriff's return. The standard book in the field is Anderson On Sheriffs, Coroners, Constables, which deals with this matter in sections 601 and 602. Anderson says this:

"An accurate, and yet concise statement of the rule as to the quantum of proof demanded of a litigant to impeach a return of an officer is difficult of statement. Assailment of such return to be successful is not required to go to the extreme of beyond a reasonable doubt, yet more than 'a mere preponderance of the evidence' is demanded to sustain the impeachment. Rule applicable to the ordinary issue of fact is not applied to the issue in these cases." Anderson cites Raulf v. Chicago Fire Brick Co., 138 Wis. 126, 119 N.W. 646:"

"evidence, reasonably, clearly satisfying the trior of triors that the return is false, is sufficient.' "

From this Anderson concludes that ". . . evidence must be strong, clear, and convincing." He goes on to say: "One witness is insufficient to overturn the certificate of the officer in these cases, whether the witness is the party served or otherwise. It must not be supposed, however, that a false return in any case cannot be established by parol evidence, since this is the only mode by which the falsity can be established."

In section 601 of the text, it says this:

"In a collateral proceeding an officer's return 'imports absolute verity as other judicial records. By

direct proceedings, such as a bill in equity, the return may be impeached upon clear averments and proof of want of service, and the existence of a valid defense. This is to the end that a party have his day in court, that a party without fault be not concluded by a record which does not speak the truth.' "

The only Pennsylvania case which we were able to find is Vaughn v. Love, 324 Pa. 276, 188 Atl. 299 (1936). It holds:

"A sheriff's return showing personal or constructive service in this State on one who claims to be a nonresident and not present in this State when the service was made, is not conclusive, and defendant may establish these facts by evidence dehors the record."

The opinion by Mr. Chief Justice Kephart is not quite as clearcut as the headnote. For instance, it says, pages 279-280:

"It scarcely needs any citation of authority to show that in this State, in the absence of fraud, a sheriff's return, full and complete on its face, is conclusive upon parties resident in the state and cannot be set aside on extrinsic evidence. The early history of the rule is clouded by contradictions. Because of its strictness, all but eight states, of which Pennsylvania is one, have thrown off the old idea that the return of a sheriff must be accepted as verity."

The footnote to this same paragraph, however, quotes a case in the time of Edward III (1340) as saying: "We must proceed according to the return of the Sheriff," and then goes on to comment, "These last ten words, reaching an absurd result under the facts, contain no reason for the result."

The Vaughn case finally ends with this paragraph:

"Both reason and justice demand that the rule of conclusiveness should not be carried any further.

This is in accord with the best authorities and the Restatement of the Law of Conflict of Laws, sec. 77, comment a, which states, 'A state cannot exercise jurisdiction over an individual on the ground that the sheriff or other officer of the state makes a return stating that he has served him with process if the return is false. The truth of the return may be brought in question in a court of any state.' We therefore hold that a sheriff's return showing personal or constructive service in this State on one who claims to be a nonresident and not present in this State when the service was made, is not conclusive and defendant may establish these facts by evidence dehors the record."

From the foregoing, we elicit the following principles, (a) prima facie the return of the magistrate is true and correct; (b) a party claiming that the record is inaccurate may have resort to parol evidence to contradict it; (c) the evidence of the party himself is legally insufficient to contradict the record; (d) the proof necessary to contradict the record must be "clear, precise and indubitable";* a mere preponderance of the evidence will not suffice.

In reaching this result, we are mindful of the presumption that official duty is regularly performed. Wheatcroft v. Schmid, 8 Pa. Commonwealth Ct. 1, 301 A. 2d 377 (1973). I do not believe that we would ever rule that a case was dismissed when the magistrate's

---

* This phrase, "clear, precise and indubitable" is imported from the rhetoric of opening judgments. See 7 Standard Pa. Pract. §128, at page 154: "In some cases, at least, the evidence not only should, but must, be clear, precise and indubitable." Footnote 16 to this sentence cites dozens of cases; e.g. Ab v. Continental Imports, 220 Pa. Superior Ct. 5, 281 A. 2d, 646 (1971). See Shuchman, Judgment Notes in Pennsylvania, Chapter 42, "Burden of Proof in Opening."

return shows that he was returned to court for grand jury action unless the circumstances were extraordinary.

Here, the proof contradicting the return seems to be "clear, precise and indubitable."

The Rules of Criminal Procedure pertaining to Justice of the Peace give us some guidelines. Rule 147 deals with amendment of transcript in court cases. It says this: "The issuing authority may make any proper amendment, additions or corrections to the transcript before it is returned to court. After the transcript has been returned, amendments, additions or corrections can be made to the transcript only upon applications filed and permission granted by the court, and, then, *only to perfect the record to conform to the facts of the case.*" (Emphasis supplied)

Rule 148 deals with compelling transmission of papers by Issuing Authority. It says:

"If an issuing authority refuses or fails to transmit the papers as required by these rules, the court may issue a subpoena to compel their production."

Accordingly, we could decide a subpoena would issue to compel the production of the papers, the same having been perfected to conform to the facts of the case to show that the said William Fiore was held by the magistrate. However, although this course would be logical and simple, it might not fully protect the rights of the defendant.

The next grand jury convenes on Monday, July 21st. We direct the district attorney to submit the matter to another magistrate. If he dismisses it, that will be the end. If he holds defendant, and there turns out to be insufficient probable cause, Mr. Fiore will not be indicted.

The court has the authority to send a matter to a

second magistrate for a second hearing, since the decision of a magistrate not to hold a defendant for court is not deemed res judicata. See Rule 141.

Since the matter is going to be sent to another magistrate, it is not necessary to analyze the evidence as to whether William Fiore was rightly or wrongly held. The hearing was directed only as to whether Mr. Tempest did hold Fiore or did not hold him. We believe that he did, but feel it better to resubmit than to subpoena.

In order that there will be time to do this and then, if necessary, try the case in September, the application of the Commonwealth for extending the time for commencement of trial under Rule 1100 is granted. (The prosecution must bring Mr. Fiore to trial by the September sessions.) The application was timely filed, and we believe these unusual circumstances authorize the grant of the necessary time.

To summarize then, what we have done here, we enumerate the following:

(1) We have made the rule absolute on defendant to show cause why an extension should not be granted;

(2) We have granted such extension not to exceed 90 days, that is to say, one grand jury and one petit jury session only;

(3) We have directed that the matter be laid before another magistrate;

(4) We believe the first magistrate held Fiore for court but did not return the papers timely, so we excuse the payment of costs by the private prosecutor.

All judicial process is necessarily in the aid of justice. The most vital element of justice is the accuracy of the fact-finding process. To allow an offender to escape justice because a magistrate misspoke himself would be intolerable. Defendant has

all the protections of the grand jury, the various rules for pre-trial relief, the presumption of innocence, the rules protecting defendant at jury trials, on appeal, and in post conviction remedies given him. This cannot hurt him, but will give the victims their day in court.

An exception is granted to the said Fiore to the action taken today.